**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANN BAKER PEPE, individually and on behalf of all others similarly situated, <br><br>　　　　　Plaintiff, <br><br>　　　v. <br><br>GENZYME CORPORATION and LABORATORY CORPORATION OF AMERICA HOLDINGS <br><br>　　　　　Defendants. | ) ) ) ) ) )  Case No.: _____ ) ) ) ) ) ) ) ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Ann Baker Pepe ("Plaintiff"), by her attorneys, brings this action both on her own behalf and on behalf of a class (the "Class") comprised of herself and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P"), against Genzyme Corporation ("Genzyme") and Laboratory Corporation of America Holdings ("LabCorp"), collectively and with their respective predecessors, subsidiaries and business units (referred to herein as "Defendants"), and alleges the following upon information and belief, except as to paragraphs pertaining to Plaintiff's own actions, which are alleged upon personal knowledge:

## INTRODUCTION

1.　　Plaintiff brings this action both on her own behalf and on behalf of a Class comprised of all others similarly situated to redress Defendants' breach of their agreements with Plaintiff and other members of the Class to store and maintain genetic material; Defendants' negligent bailment in failing to fulfill their duty to safeguard and return the bailed property to Plaintiff and members of the Class; and Defendants' engagement in unfair and deceptive acts,

practices, and omissions designed to mislead the public arising out of Defendants' advertisement and promotion of their services representing that Defendants would safely store and maintain genetic material.

2. Defendants discarded, lost, destroyed, or otherwise failed to preserve and rendered unavailable to Plaintiff and the other members of the Class the DNA samples they entrusted to Defendants. As a result of Defendants' actions, Plaintiff and other members of the Class have permanently lost their irreplaceable DNA samples and the monies they paid for Defendants' DNA banking services (which they, in effect did not receive), and may be forced to pay costs for additional genetic testing that will not achieve the same degree of accuracy as would have been possible had the DNA samples not been lost.

3. As a direct result of Defendants' failure to honor their promise to their customers to safely store and maintain their genetic material, and Defendants' misleading and false representation that they would safely store and preserve genetic material, Defendants have caused Plaintiff and the Class millions of dollars in damages.

## PARTIES

4. Plaintiff Ann Baker Pepe is an individual who, at all times material hereto, was and is a resident of Hamden, Connecticut and a "citizen" of Connecticut.

5. Defendant Genzyme Corporation is a company organized under the laws of Massachusetts with its principal office located 500 Kendall Street, Cambridge, Massachusetts 02142. Defendant Genzyme acquired Integrated Genetics Inc. in 1989. Genzyme Genetics was the successor corporation to Integrated Genetics Inc. and a wholly-owned subsidiary of Genzyme Corporation. For the purposes of diversity jurisdiction, Genzyme may be considered a "citizen"

of Massachusetts. At all times relevant hereto, Genzyme was and is doing business within this judicial District.

6. Defendant LabCorp is a company organized under the laws of Delaware with its principal office located 358 South Main Street, Burlington, North Carolina, 27215. LabCorp maintains and operates multiple laboratory locations throughout the state of Massachusetts. LabCorp purchased Genzyme Genetics in 2010 and, in doing so, assumed all liabilities stemming from the actions of Genzyme Genetics. LabCorp is subject to personal jurisdiction based on its assumption of the liabilities of Genzyme Genetics and due to the fact the wrongful conduct occurred in this district. For the purposes of diversity jurisdiction, LabCorp may be considered a "citizen" of Delaware or North Carolina.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this class action under 18 U.S.C. §1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs. Plaintiff alleges that the total claims of individual class members in this action are well in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §1332(d)(2), (5). As set forth above, Plaintiff is a citizen of Connecticut, whereas Defendants are citizens of Massachusetts and Delaware and/or North Carolina. Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a State other than Massachusetts, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100,

pursuant to 28 U.S.C. §1332(d)(5)(B).  Therefore, diversity of citizenship exists under CAFA as required by 18 U.S.C. §1332(d)(2)(A).

8. Venue in this District is proper pursuant to 28 U.S.C. §1391 because Genzyme resides in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.  Furthermore, Genzyme conducted business within this District during the relevant time period and is subject to personal jurisdiction in this District.  LabCorp is subject to personal jurisdiction in this district due the fact LabCorp has assumed all liabilities of Genzyme Genetics and because the improper conduct occurred in this District.

## FACTUAL ALLEGATIONS

### Background Information on Breast Cancer and DNA Banking

9. According to the Yale Cancer Center, breast cancer can be hereditary in some families.[1]

10. Most inherited cases of breast cancer are associated with two abnormal genes, BRCA 1 (breast cancer-1) and BRCA 2 (breast cancer-2).[2]  Mutations in these genes can be responsible for hereditary breast cancer.

11. Both of these gene mutations can be passed down in a pattern known as "autosomal dominant."[3]  This means a carrier parent has a 50% chance of passing the mutation to each of his or her children.[4]  Furthermore, if a person carries the BRCA 1 or 2 mutations, his or her siblings have a 50% chance of carrying the gene mutation.[5]  The National Cancer Institute

---

[1] Yale Cancer Center, *Genetics of Hereditary Breast and Ovarian Cancer* (2011), http://www.yalecancercenter.org/genetics/88713_genetics-of-Heredi tary-Breast-and-Ovarian-Cancer-1-2011.pdf.
[2] *Id*.
[3] *Id*.
[4] *Id*.
[5] *Id*.

4

notes that multiple cancers within a family is but one characteristic that suggests hereditary breast cancer predisposition.[6]

12. When locating the mutation in a family, it is best to first test the affected family member.[7] Once a mutation is detected in a family, other members of that family can be tested for the same mutation with a high degree of accuracy.[8] If an unaffected family member does not carry the mutation he or she may be classified as a "true negative."[9] Being classified as a "true negative" is an ideal outcome.

13. An affected relative might be tested for a mutation during his or her lifetime, or store a sample of his or her genetic material in a DNA bank for later testing.

14. DNA banking is the preservation and storage of genetic material (DNA) to be available for future testing. Genzyme offered such services through Genzyme Genetics doing business as Integrated Genetics Inc.

15. The banking of one's DNA is not covered by insurance and can cost anywhere from approximately $90 to $450.

16. DNA banking is valuable in determining a family's susceptibility to genetic disorders and diseases in the future. As technology and our understanding of genes advance, access to stored genetic material will provide vital information regarding treatment and prevention to families with hereditary diseases.

---

[6] National Cancer Institute, National Cancer Institute Fact Sheet, *BRCA1 and BRCA2: Cancer Risk and Genetic Testing* (2009), *at* http://www.cancer.gov/cancertopics/factsheet/Risk/BRCA.
[7] ET Matloff & DC Bonadies, Cancer: Principles and Practice of Oncology 634 (S Hellman & SA Rosenberg, eds., Philadelphia, Lippincott, Williams & Wilkins 9th ed. 2011) (1982).
[8] *Id*.
[9] *Id*.

17. The results from testing an affected family member's DNA cannot be recreated through other testing. Without the affected member's DNA sample, one can never reach the same level of accuracy that would have been reached had the DNA been available.

18. In effect, the sample becomes an irreplaceable source of information, necessary in aiding patients in risk assessment, surveillance, and decision-making with regard to preventative measures.[10]

19. As it allows for the most informative result when testing any other unaffected relatives, the banking of the affected family member's genetic material is strongly recommended.

20. Without the availability of the affected family member's genetic material, the assessment of possible treatment decisions for any unaffected family member is much more ambiguous.

21. The critical information contained in the genetic material of an affected relative concerns subsequent generations of children in a family, as well as the siblings, nieces and nephews of the affected relative.

22. Defendants possessed a strong presence in the DNA banking industry and were very well known among genetic counselors and other genetic professionals.

23. Defendants were regularly recommended by genetic counselors and professionals to their patients as a reputable and trustworthy source for their DNA banking needs.

24. Defendants were widely known and enjoyed an established presence in the commercial DNA banking industry. Based on their reputation and referrals by genetic counselors, Defendants received monies from Plaintiff and others similarly situated who stored DNA samples with Defendants.

---

[10] *Id.*

**Factual Allegations Regarding Plaintiff**

25.     In 1995, Plaintiff's mother, Lois Frane, was diagnosed with terminal breast cancer, and later died at age 62. Plaintiff's maternal grandmother also passed away from breast cancer, at age 60.

26.     Upon learning about her mother's condition in 1995, Plaintiff consulted a geneticist at the Yale Cancer Center who instructed Plaintiff to have a sample of her mother's blood drawn and stored in a "genetic bank" for later testing with regard to Plaintiff's own health condition. This recommendation was based on the complex health implications and increased risk of cancer that is involved when two close family members suffer from the same type of cancer.

27.     The successful banking of Plaintiff's mother's DNA was essential to allow Plaintiff and her family members to have the most informative genetic testing performed in the future.

28.     In 1995, just weeks before her mother's death, Plaintiff arranged to have her mother submit samples of her blood to Genzyme (operating as Integrated Genetics Inc.) in order to store the genetic material.

29.     Plaintiff paid Integrated Genetics Inc. $150.00 pursuant to an agreement that the samples would be stored and available to Plaintiff at a later date. *See* Invoice Agreement, attached hereto as Exhibit A.

30. In early 2011, Plaintiff's physician detected a lump in her right breast, which was surgically removed and determined to be non-cancerous. However, due to this development, the Yale Cancer Center advised Plaintiff to retrieve her mother's stored genetic material to subject it to comprehensive genetic testing.

31. This recommendation was made in order to better assess Plaintiff's risk of developing breast cancer, specifically to determine whether the BRCA 1 and 2 genes were present in her mother's genetic material.

32. On July 7, 2011, Plaintiff called the telephone number on the invoice agreement she had received from Integrated Genetics Inc. to inquire about retrieving the samples, and spoke with Dr. Sterling Puck, an employee of Genzyme, who informed her that during the course of transferring company assets from Integrated Genetics to Genzyme many, if not all, of the stored blood and tissue samples held by Integrated Genetics were "compromised," and destroyed.

33. Prior to Plaintiff's conversation with Dr. Puck, Defendants never informed Plaintiff that the blood sample had been "compromised" or destroyed.

34. Plaintiff's address and telephone number have remained the same since submitting the blood sample in 1995.

35. Defendants had access to Plaintiff's contact information, as it was provided on the Invoice Agreement; thus Defendants could easily have reached her at any time, using the contact information it had on file for her.

36. Defendants breached its agreement with Plaintiff when they failed to perform their contractual obligation to safely store Plaintiff's DNA sample.

37. Upon delivery and acceptance of the genetic material, Defendants entered into a bailment relationship with Plaintiff. Plaintiff entrusted the DNA sample to Defendants under the reasonable expectation that Defendants would safely store and maintain the genetic material.

38. By their own admission, Defendants lost or destroyed the very samples that Plaintiff and Class members had entrusted to them for safekeeping, and thus, is liable in damages for its negligence.

39. Defendants misrepresented themselves as operating a trustworthy and secure facility for DNA storage. Plaintiff was deceived into believing that her mother's DNA samples would be securely stored with Defendants.

40. Defendants continued to deceive Plaintiff when they failed to inform her that the sample was destroyed, lost, or otherwise rendered unavailable to Plaintiff.

41. Defendants' loss of the genetic material caused Plaintiff to incur additional, costly invasive genetic testing not covered by Plaintiff's health insurance.

42. As a result of Defendants' destruction of this irreplaceable sample, Plaintiff's own genetic testing has been considerably more expensive and invasive and less informative, and has left her with ongoing fear and uncertainty regarding her own fate and that of her family – precisely the situation that banking the genetic material was supposed to prevent in the first place.

### **Defendants' Wrongful Conduct**

43. Defendants represented themselves as a trustworthy source of commercial DNA banking services for individuals seeking to preserve and store DNA samples.

44. Defendants entered into agreements with Plaintiff and Class members to safely store, maintain, and return upon request, certain genetic material supplied by Plaintiff and Class members.

45. Defendants received monies from Plaintiff and the Class in exchange for Defendants' promise to safely store Plaintiff's and Class members' DNA samples. After taking possession of Plaintiff's and Class members' DNA samples, Defendants subsequently discarded, lost, destroyed, or otherwise failed to return the samples to Plaintiff and Class members upon their request.

46. When Defendants failed to return the DNA samples to Plaintiff and other Class members, Defendants breached their agreements with Plaintiff and Class members to safely store the DNA samples.

47. Defendants failed in their obligation and duty to protect and store the DNA samples entrusted to them by Plaintiff and Class members when they lost, discarded, destroyed, or otherwise rendered them unavailable to Plaintiff and Class members.

48. Defendants engaged in deceptive and misleading promotion, marketing, advertising, and sale of their DNA banking services when they induced Plaintiff and Class members to purchase Defendants' services through false and misleading representations. Plaintiff and Class members purchased Defendants' DNA banking services based on Defendants' representations that they were a safe and trustworthy DNA banking service.

49. Defendants continued to deceive Plaintiff and Class members by failing to inform them that their DNA samples were destroyed, lost or otherwise rendered unavailable to them.

50. As a result of Defendants' improper conduct, Plaintiff and Class members have permanently lost their irreplaceable DNA samples, the monies they paid for Defendants' failed

services, and may be forced to pay costs for additional genetic testing that will not achieve the same degree of accuracy as would the original affected family member's DNA sample.

## CLASS ALLEGATIONS

51. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

52. Plaintiff brings this action on behalf of herself and all members of a class (the "Class") comprised of all individuals, or customers, who purchased DNA banking services from Defendants and/or any of their predecessors, subsidiaries or business units and whose DNA samples were subsequently lost, destroyed, or misplaced by Defendants.

53. All putative Class members were and are similarly affected by Defendants' misconduct, as set forth in detail above, and the relief sought herein is for the benefit of Plaintiff and members of the putative Class.

54. Based upon the information provided to Plaintiff on July 7, 2011 by Genzyme employee Dr. Sterling Puck, many if not all of the blood and tissue samples entrusted to Integrated Genetics were "compromised" during the course of transferring company assets from Integrated Genetics to Genzyme. Thus, there are many other individuals who are similarly situated to Plaintiff.

55. Plaintiff alleges that the Class is so numerous that joinder of all members would be impractical.

56. Questions of law and fact common to the Class exist and predominate over questions affecting only individual members, including, *inter alia*:

      (a) Whether Defendants lost or destroyed samples of genetic material entrusted to it by Plaintiff and Class members;

      (b) Whether Defendants breached their express contracts with Plaintiff and other Class members;

    (c) Whether Defendants acted negligently in failing to fulfill their duty as bailee to the bailed property entrusted to them by Plaintiff and other Class members;

    (d) Whether Defendants' practices in connection with promoting, marketing, and advertising their services were deceptive or unfair in any respect, thereby violating M. G. L. c. 93A, §§ 2 and 9;

    (e) Whether Defendants negligently promoted, marketed, or advertised their DNA banking services; and

    (f) Whether Defendants' conduct as set forth above injured Plaintiff and other Class members.

57. Plaintiff's claims as representative of the Class are typical of the claims of the Class. Plaintiff will fairly and adequately protect the interests of the Class, and has retained attorneys experienced in class and complex litigation as her counsel.

58. Certification of this class action is appropriate under F.R.C.P. 23(b) because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action remedy, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Certification is also appropriate because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole. Further, given the large number of customers of Defendants, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

59. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the

prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.  The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that it might be argued would arise with regard to the management of this class action.

## **COUNT ONE**
(Breach of Contract)

60. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

61. Defendants entered into a written agreement with Plaintiff in 1995 to safely store, maintain, and return upon request, certain genetic material supplied by Plaintiff.

62. Plaintiff agreed to pay, and did pay, $150.00 in exchange for Defendants' DNA banking services.

63. By destroying and failing to return the genetic material to Plaintiff, Defendants have breached their contract with Plaintiff.

64. By destroying and failing to return the genetic material entrusted to them by other Class members, Defendants have breached their contracts with Plaintiff and other members of the Class.

65. Plaintiff and other members of the Class have suffered damage as a result of Defendants' breach of contract, in the form of the money paid to Defendants for their purported services and additional costs associated with invasive genetic testing that otherwise would have been unnecessary had Defendants met their contractual obligations.

## **COUNT TWO**
(Common Law Bailment)

66. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

67. The DNA samples submitted to Defendants constitute Plaintiff's and Class members' personal property.

68. Plaintiff and Class members entrusted such personal property to Defendants.

69. As bailees, Defendants had an obligation to adequately protect the personal property entrusted from destruction, loss, damage, or any other action that would make the property otherwise unavailable to Plaintiff and the Class members.

70. Defendants breached the duties arising from the bailment by failing to adequately protect the Plaintiff and Class members' personal property (*i.e.*, DNA samples).

71. Plaintiff and the Class have been injured as a proximate result of these breaches and negligent actions and Defendants' conduct constitutes a breach arising from the common law bailment, as set forth above.

## **COUNT THREE**
(Violation of M. G. L. c. 93A §§ 2 and 9)

72. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

73. This cause of action is brought on behalf of Plaintiff and members of the Class pursuant to M.G.L. c. 93A §§ 2 and 9. M.G.L. c. 93A §2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. c. 93A § 9 permits any consumer injured by a violation of M.G.L. c. 93A § 2 to bring a civil action, including a class action, for damages and injunctive relief.

74. Plaintiff is informed and believes, and based on such information and belief, alleges that Defendants committed unfair and deceptive business acts and/or practices in violation of M.G.L. c. 93A §§ 2 and 9.

75.     Defendants' representations that their DNA banking services were safe and secure, and that their facility was a reliable facility at which to store DNA and genetic material, were unfair and deceptive, as Defendants subsequently discarded, lost, destroyed, or otherwise failed to preserve and rendered unavailable Plaintiff's and other Class member's stored DNA samples.  These representations violated 940 C.M.R. 3.05 and M.G.L. c. 93A § 2.

76.     Defendants' acts and practices were unfair and deceptive in material respects. Defendants' unfair and deceptive representations regarding the safety and security of their banking services induced Plaintiff and members of the Class into purchasing Defendants' DNA banking services.  Plaintiff and the Class members purchased Defendants' DNA banking services under the reasonable expectation that their irreplaceable DNA samples would be maintained in a safe and secure manner.

77.     As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and the Class have suffered injury by paying for Defendants' failed services, and have also incurred additional costs associated with additional genetic testing due to Defendants' loss or destruction of the DNA samples.

78.     Plaintiff and other members of the Class would not have purchased Defendants' DNA storage services had they realized the services were not reliable and that the DNA samples would be discarded, lost, destroyed, or otherwise rendered unavailable to Plaintiff and Class members.

79.     Plaintiff made a demand for relief, in writing, to Defendants at least thirty (30) days prior to filing this complaint, as required by M.G.L. c. 93A § 9.  Plaintiff has not received a response to the demand.

80. Based on the foregoing, Plaintiff and the other members of the Class are entitled to all remedies available pursuant to M.G.L c. 93A, including, but not limited to, refunds, actual damages, or statutory damages in the amount of twenty-five dollars per violation, whichever is greater, double or treble damages, attorneys' fees and other reasonable costs.

81. Pursuant to M.G.L. c. 231, § 6B, Plaintiff and other members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendants' wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and Class members are entitled to interest in an amount according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray that the Court enter judgment for them against Defendants as follows:

(a) Certifying the Class pursuant to F.R.C.P. 23, certifying Plaintiff as the representative of the Class, and designating Plaintiff's counsel as counsel for the Class:

(b) Requiring the Defendant to make whole any losses suffered by Plaintiff and the Class as a result of their misconduct;

(c) Declaring that Defendants' conduct constituted breach of contract and negligent bailment;

(d) Awarding Plaintiff general compensatory damages in an amount to be determined at trial;

(e) Declaring that Defendants' acts and practices, as described herein, constitute unfair and deceptive acts and practices that are unlawful under M.G.L. c. 93A §§ 2 and 9;

(f) Awarding Plaintiff and the Class permanent injunctive relief prohibiting, restraining and enjoining Defendants from engaging in the conduct complained of herein, including, *inter alia*, promoting, marketing, and/or advertising their DNA banking services in the manner described herein;

(g) Ordering Defendants to issue corrective advertising;

(h) Awarding Plaintiff and the Class refunds, actual damages or statutory damages in the amount of twenty-five dollars per violation, whichever is greater, refunds, double or treble damages, consequential damages, other special damages, attorneys' fees and other reasonable costs; and

(i) Granting any such other and further legal or equitable relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable as a matter of right.

Dated:  June 21, 2012                                Respectfully submitted,

*s/ Patrick J. Sheehan*
Patrick J. Sheehan
Whatley Kallas, LLC
60 State Street, 7th Floor
Boston, MA  02109
Telephone: (617) 573-5118
Facsimile: (617) 573-5090

Edith M. Kallas
Ilze C. Thielmann
Whatley Kallas, LLC
380 Madison Avenue, 23rd Floor
New York, New York  10017
Telephone: (212) 447-7070
Facsimile: (212) 447-7077